DICKERSON v WARDEN, MARQUETTE PRISON

Docket No. 46384. Submitted February 5, 1980, at Lansing.—Decided
August 27, 1980.

Chester G. Dickerson and Oscar J. Pratt, prisoners at the Mar-
quette Branch Prison, were placed in solitary confinement
following an administrative hearing in which their security
classification was changed to one of "administrative segrega-
tion" pending an investigation of alleged misconduct by Dicker-
son and Pratt. Approximately one month after being placed in
administrative segregation, Dickerson and Pratt filed in Mar-
quette Circuit Court a document entitled "Order to Show
Cause" in which they alleged that they had been denied Fed-
eral constitutional rights under color of state law, asserted that
the circuit court had jurisdiction pursuant to 42 USC 1983, and
sought certain injunctive relief and monetary damages against
the warden of Marquette Prison. The Marquette Circuit Court,
John E. McDonald, J., treated the pleadings as seeking habeas
corpus relief and dismissed the proceedings on the basis that
the plaintiffs had not exhausted their administrative remedies.
After eight months in solitary confinement, plaintiffs had a
disciplinary hearing and received penalties of seven days in
solitary confinement. Plaintiffs appeal. Defendant filed a motion
to dismiss the appeal. *Held:*

1. *The motion to dismiss the appeal is denied.*

2. State courts have concurrent jurisdiction to hear claims
brought pursuant to 42 USC 1983 that Federal constitutional
rights had been violated under color of state law. Although the
cause of action is created by Federal statute, state courts have
jurisdiction to hear such claims.

3. While the scope of the rights afforded a prison inmate in a

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d (Rev), Civil Rights § 263 *et seq.*
[2-6] 60 Am Jur 2d, Penal and Correctional Institutions § 41.5.
[5] Relief, under federal Civil Rights Acts, to state prisoners complain-
ing of conditions relating to corporal punishment, punitive segre-
gation, or other similar physical disciplinary measures. 18 ALR
Fed 7.
[6] 60 Am Jur 2d, Penal and Correction Institutions § 49.

disciplinary proceeding does not include the full panoply of rights and protections guaranteed to a defendant in a criminal prosecution, incarceration does not mean that an inmate forfeits all his constitutional rights.

4. Due process requires that before disciplinary segregated confinement may be imposed a prison inmate must: (1) be given written notice at least 24 hours prior to the disciplinary hearing; (2) be furnished with a written statement by the factfinder explaining the reason for any disciplinary action; and (3) be afforded the opportunity to call witnesses and present documentary evidence, if this would not be unduly hazardous to institutional safety or correctional goals.

5. The classification of plaintiffs' solitary confinement as "administrative confinement" does not change the true disciplinary character of that confinement. While administrative confinement of short duration may be proper without providing either notice or a hearing, the eight months of solitary confinement before the full disciplinary hearing was held rendered that confinement disciplinary rather than administrative in nature. Due process thus mandated that, before the imposition of the solitary confinement, plaintiffs be afforded an evidentiary hearing and the right to present evidence on their own behalf. Plaintiffs' allegations in their complaint in the circuit court, having therein alleged a deprivation of a Federal constitutional right under color of state law, stated a cause of action under 42 USC 1983.

6. Since the question involved is one of constitutional proportions, judicial review is not precluded by any failure to exhaust administrative remedies, since the Department of Corrections, as an administrative agency, is not empowered to adjudicate the constitutional claims.

Reversed and remanded.

1. COURTS — STATE COURTS — JURISDICTION — CONSTITUTIONAL
RIGHTS — FEDERAL STATUTE.

State courts exercise concurrent jurisdiction over claims brought under the Federal statute creating the right to bring actions where Federal constitutional rights have been violated under color of state law (42 USC 1983).

2. PRISONS AND PRISONERS — CONSTITUTIONAL LAW — DISCIPLINARY
PROCEEDINGS — EXTENT OF CONSTITUTIONAL PROTECTION.

The extent of the rights afforded to a prison inmate in a disciplinary proceeding does not include the full panoply of rights and protections guaranteed to a defendant in a criminal prosecu-

tion, although incarceration does not mean that the inmate forfeits all his constitutional rights.

3. PRISONS AND PRISONERS — CONSTITUTIONAL LAW — DUE PROCESS — DISCIPLINARY MEASURES — SEGREGATED CONFINEMENT.

Due process requires that before the imposition on a prison inmate of disciplinary segregated confinement the prison inmate must: (1) be given written notice of the charges at least 24 hours prior to the disciplinary hearing; (2) be furnished with a written statement by the factfinder explaining the reason for any disciplinary action; and (3) be afforded the opportunity to call witnesses and present documentary evidence, if this would not be unduly hazardous to institutional safety or correctional goals.

4. PRISONS AND PRISONERS — SEGREGATED CONFINEMENT — EVIDENTIARY HEARINGS — NOTICE — CONSTITUTIONAL LAW — STATUTES.

The classification of segregated confinement of a prison inmate as "administrative confinement" rather than "disciplinary confinement" does not relieve prison officials from conducting an evidentiary hearing with proper notice to the prisoner where such segregated confinement is not of short duration; the classification of such segregated confinement as administrative confinement does not take such confinement outside the scope of either the constitutional due process requirements or statutory mandate relative to the necessary notice and hearing that must be afforded to a prisoner before the imposition of segregated confinement (MCL 791.251, 791.252; MSA 28.2320[51], 28.2320[52]).

5. PRISONS AND PRISONERS — ACTIONS — PLEADINGS — CONSTITUTIONAL RIGHTS — STATUTES.

An allegation by a prisoner that he was detained in segregated confinement for eight months pursuant to an administration reclassification following a hearing at which the prisoner was not permitted to speak in his own defense is sufficient to allege a deprivation of Federal constitutional rights under color of state law within the meaning of the Federal statute creating such actions (42 USC 1983).

6. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — PRISON DISCIPLINARY HEARINGS — CONTESTED CASES — JUDICIAL REVIEW — EXHAUSTION OF REMEDIES — STATUTES.

Disciplinary hearings of prisoners, being contested cases pursuant to the Administrative Procedures Act, are subject to the right

of judicial review after exhaustion of administrative remedies; however, the failure to exhaust the administrative remedies does not preclude judicial review where to do so would be useless or where a constitutional question, which the administrative agency is powerless to determine, is involved (MCL 24.301; MSA 3.560[201]).

Chester G. Dickerson and Oscar J. Pratt, *in propriis personis.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Keith D. Roberts,* Assistant Attorney General, for defendant.

Before: CYNAR, P.J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

V. J. BRENNAN, J. Chester G. Dickerson and Oscar J. Pratt, inmates of the Marquette Branch Prison, appeal from the circuit court's dismissal of their "order for show cause" which alleged, pursuant to 42 USC 1983, a denial of Federal constitutional rights under color of state law. The plaintiffs claim that they were reclassified to a more restrictive inmate status without being afforded an opportunity to present proof to dispute the charges which served as the basis for their reclassification.

The incident which led to the reclassification occurred on June 6, 1978, when the plaintiffs were visited by Barbara Kreusher. Because of the trio's suspicious behavior, the visit was terminated, and the plaintiffs were searched. During the search, the plaintiffs struggled with a guard, and plaintiff Pratt flushed an object down a toilet. A subsequent search of the sewer line disclosed a round, dark object about three inches in length containing a sizeable quantity of marijuana. The guard identified this object as that which he saw plaintiff Pratt flush down the toilet.

On June 7, 1978, both plaintiffs were served with a notice of intent to conduct an administrative hearing concerning their security classifications. Following a hearing on June 8, 1978, the pair were placed in solitary confinement, which was termed "administrative segregation, triple O, F Unit; and also placed on closed visits". According to a prison spokesperson, the purpose of the June 8, 1978, classification hearing was not to investigate the alleged misconduct or criminal behavior but merely to decide whether to place the inmates in some form of restrictive custody until the matter was settled. A disciplinary hearing was conducted eight months later, at which time the plaintiffs received penalties of seven days in solitary confinement. The plaintiffs remained in solitary confinement in the interim.

On July 18, 1978, the circuit court denied the petition in an opinion and order.[1] The judge did not reach the underlying merits of the dispute, finding that the plaintiffs had not exhausted their administrative remedies. The plaintiffs appeal. The defendant filed a motion to dismiss the appeal which we deny.

The first question before us is whether the plaintiffs have made out a claim actionable under 42 USC 1983. Although 42 USC 1983 is a Federal statute, state courts exercise concurrent jurisdiction over § 1983 claims. *International Prisoners' Union v Rizzo,* 356 F Supp 806 (ED Pa, 1973), *Brown v Pitchess,* 13 Cal 3d 518; 119 Cal Rptr 204; 531 P2d 772 (1975), *Alberty v Daniel,* 25 Ill App 3d 291; 323 NE2d 110 (1974), *Terry v Kolski,* 78 Wis 2d 475; 254 NW2d 704 (1977). Despite the forego-

---

[1] Respondent in its brief below and the trial court in its opinion characterized the plaintiffs' petition as seeking habeas corpus relief. However, this is clearly an inaccurate characterization since plaintiffs' petition never mentions habeas corpus.

ing, if the petitioner in an action brought pursuant to 42 USC 1983 fails to plead that a constitutional right has been violated under color of state law, there can be no redress under the statute. In the instant case, the plaintiffs allege a violation of their rights to procedural due process. Specifically, they claim that they were reclassified to more restrictive inmate status without being afforded an opportunity to present proof to dispute the charges which served as the basis for the reclassification.

It cannot be gainsaid that the plaintiffs, as inmates of Marquette Prison, do not have a right to the same constitutional protections accorded nonimprisoned citizens. These plaintiffs have been found guilty beyond a reasonable doubt in a judicial proceeding providing the full panoply of rights and protections guaranteed to the criminally accused under both our Federal and state Constitutions. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights justified by considerations underlying the penal system. While the convicted prisoner does not forfeit all his constitutional protections when the prison gates close behind him, prison disciplinary proceedings are not part of a criminal prosecution and thus do not call into play all those rights due a defendant in a criminal prosecution. *Wolff v McDonnell,* 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974).[2]

---

[2] In *Wolff* the Supreme Court addressed, among other questions, whether Nebraska prison disciplinary proceedings complied with the due process clause of the Federal Constitution. The applicable Nebraska statute provided for a range of possible disciplinary action. A finding of flagrant or serious misconduct allowed the chief executive officer to take away a prisoner's "good-time credit" and confine that person in a disciplinary cell. Since Nebraska had created the right to good time by statute, the prisoner's interest in that right "is sufficiently embraced within Fourteenth Amendment 'liberty', to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated". 418 US 539, 557.

In *Wolff,* the Supreme Court determined that before a prisoner could be denied "good-time credit", the following due process requirements must be met: (1) advance written notice of the charges of at least 24 hours prior to the disciplinary hearing; (2) a written statement by the factfinder(s) explaining the reason for any disciplinary action must be supplied to the prisoner; and (3) the opportunity to call witnesses and present documentary evidence, if this would not be unduly hazardous to institutional safety or correctional goals, must be afforded to the prisoner. While *Wolff* was concerned with the question of the state's deprivation of good-time credits, footnote 19 extends these minimal due process requirements to the imposition of "solitary confinement" as a disciplinary measure.

"19. Although the complaint put at issue the procedures employed with respect to the deprivation of good time, under the Nebraska system, the same procedures are employed where disciplinary confinement is imposed. The deprivation of good time and 'solitary' confinement are reserved for instances where serious misbehavior has occurred. This appears a realistic approach, for it would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good time is forfeited and those that must be extended when solitary confinement is at issue. The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. *Here, as in the case of good time, there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction.* We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser

penalties such as the loss of privileges." (Emphasis (added.) 418 US 539, 571-572.

Following *Wolff,* the Supreme Court declined to extend due process procedural requirements to the transfer of prisoners from one penal institution to another, *Meachum v Fano,* 427 US 215; 96 S Ct 2532; 49 L Ed 2d 451 (1976), *reh den* 429 US 873; 97 S Ct 191; 50 L Ed 2d 155 (1976), regardless of whether or not the transfers are the result of the inmates' behavior. *Montanye v Haymes,* 427 US 236, 242; 96 S Ct 2543; 49 L Ed 2d 466 (1976):

"The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive."

Significantly, the Court did point out in *Montanye* that "[n]o loss of good time, *segregated confinement,* loss of privileges, or any other disciplinary measures accompanied the transfer". (Emphasis added.) 427 US 236, 238. And in *Meachum,* the Court stated that its holding in *Wolff* stood. 427 US 215, 225. In the wake of *Montanye* and *Meachum,* the Federal courts of appeal have found that *Wolff* still applies where the prisoner is subjected to disciplinary confinement or segregation. See, for instance, *Aikens v Lash,* 547 F2d 372, 373 (CA 7, 1976), *Bruce v Wade,* 537 F2d 850, 854 (CA 5, 1976).

In the instant case, the inmates were originally placed in administrative segregation following a "security classification hearing" as distinguished from a disciplinary hearing. A prison official at the show cause hearing explained:

"MR. MAYNARD: In cases of this nature, generally,

they are instructed that this is not—it's a matter of a security classification hearing and they are not to discuss or talk about the incident—the misconduct—the alleged misconduct or the alleged criminal behavior because it may tend to jeopardize their position in the eventual action. And it's merely to decide and to inform them of the decision that they are going to be placed in some form of restrictive custody until this matter is settled."

The hearing at issue here was termed administrative and not disciplinary. Accordingly, the sanction imposed was termed "administrative segregation". The plaintiffs contend, however, and it is not disputed, that administrative segregation is identical to solitary confinement. In either situation, all privileges and rights are identical.

The warden argues that since the initial hearing was one of reclassification and not disciplinary, those minimal due process protections of *Wolff* do not apply. Under ordinary circumstances, we would agree that prisoners may be transferred from one prison to another or have their status reclassified without bringing *Wolff* into play. Under the circumstances presented by this case, however, and regardless of how the warden chooses to characterize it, the initial hearing was, in fact, a disciplinary one since: the initial hearing was instituted after specific acts of misconduct had occurred; the punishment imposed was solitary confinement; and the length of solitary confinement, some eight months, was significantly disproportionate to the penalty of seven days in solitary confinement finally imposed after the plaintiffs were found guilty in a subsequent "disciplinary" hearing. The plaintiffs do not dispute that they received a notice of intent to conduct an administrative hearing concerning their security classifica-

tion or that such a hearing was held. Rather, they claim that they can establish that the hearing was a sham since they were not allowed to speak in their own defense. The defendant claims that use of this procedure was to protect the plaintiffs from jeopardizing their position in any subsequent criminal action. Despite the explanation which the defendant offers, we find that the plaintiffs made sufficient allegations in their "order for show cause" to support their claim that they had been denied procedural due process.

As support for this position we note that the Legislature has recently recognized that those due process rights which the plaintiffs contend were denied are required when an inmate is punished for violating a prison rule or where a security classification hearing may result in administrative segregation. MCL 791.201 *et seq.;* MSA 28.2271 *et seq.,* has been amended by the addition of sections 51 and 52 which provide in part:

"Sec. 51. (1) There is created within the department a hearings division. The division shall be under the direction and supervision of the hearings administrator who is appointed by the director of the department.

"(2) The hearings division shall be responsible for each prisoner hearing which the department conducts which may result in the loss by a prisoner of either a right or significant privilege, including but not limited to any 1 or more of the following matters:

"(a) An *infraction of a prison rule* which may result in *punitive detention* or the loss of good time.

"(b) A *security classification* which may result in the placement of a prisoner in *administrative segregation."* (Emphasis added.) MCL 791.251; MSA 28.2320(51).

"Sec. 52. The following procedures shall apply to each prisoner hearing conducted pursuant to section 51(2):

"(a) The parties shall be given an *opportunity for an evidentiary hearing without undue delay.*

"(b) The parties shall be given reasonable notice of the hearing.

"(c) If a party fails to appear at a hearing after proper service of notice, the hearings officer, if an adjournment is not granted, may proceed with the hearing and make a decision in the absence of the party.

"(d) Each party, shall be given an *opportunity to present evidence and oral and written arguments on issues of fact.*" (Emphasis added.) MCL 791.252; MSA 28.2320(52).

Thus, regardless of the characterization of the initial hearing, under the newly amended legislation the plaintiffs would have been entitled to present evidence and speak in their own defense.

In taking this position we do not wish to be read as foreclosing prison officials from taking summary action and imposing administrative segregation when there is suspicion or more of an infraction of a prison rule or where other exigent circumstances exist. We can envision many circumstances likely to occur in a prison setting wherein administrative segregation for a short period of time would be proper and necessary and may be imposed without first providing either notice or a hearing. And, in fact, such a procedure would have been proper here were it not for the initial alleged "sham" hearing and the fact that the plaintiffs remained in solitary confinement for some eight months before they were given a full hearing. Under these circumstances, we believe that the plaintiffs' pleadings in the circuit court allege a deprivation of Federal constitutional rights under color of state law pursuant to 42 USC 1983.

The trial judge held that the plaintiffs failed to exhaust their administrative remedies under the Administrative Procedures Act (APA). This Court

has determined that a prison disciplinary hearing is a contested case under the provisions of the APA and the parties to such a hearing are entitled to the procedural safeguards of the act and have the right to judicial review. *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554 (1979). Pursuant to MCL 24.301; MSA 3.560(201), a plaintiff must exhaust administrative remedies before seeking judicial review. *Oak Construction Co v Dep't of State Highways,* 33 Mich App 561; 190 NW2d 296 (1971). Exhaustion provides the reviewing court the benefit of a factual record. *Saginaw School Dist v United States Dep't of Health, Education & Welfare,* 431 F Supp 147 (ED Mich, 1977). By requiring exhaustion, resort to the courts in the face of available administrative procedures is precluded unless administrative procedures are incapable of providing relief. The exhaustion rule, however, does not apply where it is obvious that to pursue additional procedures would be a useless effort. *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343; 184 NW2d 247 (1970).

The instant case alleges deprivation of a constitutional right. In *Diggs v State Board of Embalmers and Funeral Directors,* 321 Mich 508; 32 NW2d 728 (1948), the Michigan Supreme Court held that the exhaustion doctrine does not apply when a controlling constitutional issue is raised. In *Diggs,* unlike the instant case, the plaintiff asserted that the statute under which the board proceeded was unconstitutional. Here, however, petitioners do not assail the constitutionality of the entire procedural system by which they are to be disciplined. Rather they claim that although they were given a hearing, that hearing was a sham.

Despite this distinction, the rationale that ad-

ministrative agencies do not have the power to determine constitutional questions is applicable. See *Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946). The plaintiffs here do not assert that the entire system for reviewing claims of misconduct is not in accord with *Wolff* and thus unconstitutional but rather that although the rules were followed they were denied due process. If the reviewing authority were to agree with the plaintiffs and find that agency rules had been followed, the constitutional issue concerning whether the plaintiffs were denied due process would remain. The Bureau of Correctional Facilities is not empowered to adjudicate constitutional claims.

Without intimating any view on the merits of the plaintiffs' allegations, we conclude that they are entitled to an opportunity to offer proof. See *Haines v Kerner,* 404 US 519; 92 S Ct 594; 30 L Ed 2d 652 (1972).

Reversed and remanded.