KARCHEFSKE v DEPARTMENT OF MENTAL HEALTH

Docket No. 69058. Submitted March 13, 1984, at Detroit.—Decided May 20, 1985. Leave to appeal applied for.

Margaret Karchefske, personal representative of the estate of Stephen Karchefske, deceased, and others brought an action in the Court of Claims against the Department of Mental Health. Plaintiffs alleged that the decedent, an inpatient at Northville Regional Psychiatric Hospital, was physically restrained in a manner which strangled or choked him and caused the blood supply to his brain to be stopped, resulting in death. Plaintiffs further alleged that the negligent and intentional acts or omissions of defendant were reasonably and substantially likely to result in the infliction of cruel and unusual punishment while depriving decedent of life without due process of law, contrary to the United States and Michigan Constitutions. Defendant was granted a summary judgment on the ground that plaintiffs had not pled facts in avoidance of governmental immunity, Richard C. Kaufman, J. Plaintiffs appealed. *Held:*

1. A state may be held liable as a "person" under a federal civil rights statute for violation of federal constitutional rights.

2. The federal statute which created a cause of action for the deprivation of civil rights by any person did not abrogate state sovereign immunity. Michigan has not waived its immunity and is, therefore, immune from suit under the statute.

3. The Court of Appeals declined to infer a remedy of monetary damages from the due process clause in the state constitution.

Affirmed.

N. J. KAUFMAN, J., concurred separately.

1. CIVIL RIGHTS — STATES — GOVERNMENTAL IMMUNITY.

A state may be held liable as a "person" under a federal civil rights statute for violation of federal constitutional rights (42 USC 1983).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 15 Am Jur 2d, Civil Rights § 268.

16 Am Jur 2d, Constitutional Law §§ 281, 282.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 69.

[3] 16A Am Jur 2d, Constitutional Law § 814.

2. GOVERNMENTAL IMMUNITY — CIVIL RIGHTS — STATES.

The federal statute which created a cause of action for the deprivation of civil rights by any person did not abrogate state sovereign immunity; Michigan has not waived its immunity and is, therefore, immune from suit under the statute (42 USC 1983).

3. CONSTITUTIONAL LAW — DUE PROCESS — REMEDIES.

The creation of a monetary damages remedy for violation of the due process clause of the Michigan Constitution is a matter for the Supreme Court in the first instance (Const 1963, art 1, § 17).

*Swanson & Torgow, P.C.* (by *Mikael G. Hahner* and *Gary H. Torgow*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Alan Hoffman,* Assistants Attorney General, for defendant.

Before: WAHLS, P.J., and BRONSON and N. J. KAUFMAN,* JJ.

WAHLS, P.J. Plaintiffs allege in their complaint that on or about July 17, 1981, while receiving psychiatric treatment as an inpatient of the Northville Regional Psychiatric Hospital, plaintiffs' decedent was physically restrained in a manner which strangled or choked him and caused the blood supply to his brain to be stopped, resulting in death. Plaintiffs further allege that the negligent and intentional acts or omissions of defendant were reasonably and substantially likely to result in the infliction of cruel and unusual punishment[1] while depriving decedent of life without due process of law,[2] contrary to the United States and Michigan Constitutions. Defendant, State of

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

[1] US Const, Am VIII; Const 1963, art 1, § 16.

[2] US Const, Am XIV; Const 1963, art 1, § 17.

Michigan, moved for summary judgment pursuant to GCR 1963, 117.2(1), on the ground that plaintiffs had not pled facts in avoidance of governmental immunity. The motion was granted and this appeal was taken by plaintiffs as of right.

Plaintiffs brought their federal constitutional claim pursuant to 42 USC 1983. Defendant argues that § 1983 is inapplicable because the state is not a person within the meaning of that section.[3] Defendant assails this Court's decision in *Smith v Michigan,* 122 Mich App 340, 348-352; 333 NW2d 50 (1983), *lv pending,* which holds otherwise.

We agree with the reasoning of *Smith, supra,* that the state is a "person" for purposes of § 1983 liability. However, because defendant has attacked at some length the validity of the *Smith* decision, we believe that further discussion of this matter is in order.

In *Monell v New York City Dep't of Social Services,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the United States Supreme Court reconsidered whether a municipal corporation was a "person" under § 1983.[4] Following examination of the debates on the Civil Rights Act of 1871, § 1 of which is now 42 USC 1983, and application of appropriate rules of construction, the Court concluded that § 1 unequivocally was intended to cover legal as well as natural persons. *Id.,* p 683. The Court went on to state:

---

[3] Section 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4] In *Monroe v Pape,* 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961), the Supreme Court had held that municipal corporations were not persons under § 1983.

"Since there is nothing in the 'context' of § 1 of the Civil Rights Act calling for a restricted interpretation of the word 'person,' the language of that section should prima facie be construed to include 'bodies politic' among the entities that could be sued." *Id.,* pp 689-690, fn 53.

We believe this analysis of the act is applicable also to the state as a "person" and, therefore, we must turn to considerations apart from the debates and the language of § 1983 in order to decide the question before us.

Defendant asserts that the question of whether the state is a person under 42 USC 1983 has been resolved by the United States Supreme Court through a progression of cases culminating in *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979). This view of *Quern* arises out of Justice Brennan's concurring opinion, which states that the majority concluded, "in what is patently dicta, that a State is not a 'person' for purposes of 42 USC § 1983". *Id.,* p 350. We agree with this Court's opinion in *Smith, supra,* that Justice Brennan's characterization of the majority opinion in *Quern* is in error.

Justice Brennan's analysis relies on the proposition that, "[i]f a State were a 'person' for purposes of § 1983, therefore, its immunity under the Eleventh Amendment would be abrogated by the statute".[5] *Quern, supra,* pp 350-351. This proposition

_____

[5] US Const, Am XI states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment affirms the fundamental principle of sovereign immunity as a limit on the federal judicial power established in US Const, art III. *Pennhurst State School & Hospital v Halderman,* — US —; 104 S Ct 900, 906-907; 79 L Ed 2d 67, 77 (1984). Thus, suit in federal court by a citizen against his or her own state is also

does not stand up when tested under the majority's standard for abrogation of Eleventh Amendment immunity. *Id.,* pp 343-345.[6] First, assuming "any person" includes the state, must it be said the § 1983 "explicitly and by clear language indicate(s) on its face an intent to sweep away the immunity of the States"? We believe not. Although we construe "person" broadly to include the state, we do not find the word particularly helpful in deciding what immunities and other defenses against liability may be raised by the person. That Congress intended some immunities to remain is abundantly clear from the Supreme Court case law. Thus, in *Monell, supra,* after expressly holding that municipal bodies are not entitled to absolute immunity; the Court reserved the question whether some form of official immunity should be offered.[7] In other cases, the Court has recognized the absolute or qualified immunity of legislators, judges, executive officers and police, among others. *Supreme Court of Virginia v Consumers Union of United States, Inc,* 446 US 719; 100 S Ct 1967; 64 L Ed 2d 641 (1980) (absolute immunity for justices acting in legislative capactiy), *Procunier v Navarette,* 434 US 555; 98 S Ct 855; 55 L Ed 2d 24 (1978) (qualified immunity for

generally precluded. *Hans v Louisiana,* 134 US 1; 10 S Ct 504; 33 L Ed 842 (1890).

[6] Congress may abrogate Eleventh Amendment immunity in order to enforce the Fourteenth Amendment, *Fitzpatrick v Bitzer,* 427 US 445; 96 S Ct 2666; 49 L Ed 2d 614 (1976), but its purpose to abrogate must be very clear: (1) a statute may explicitly and by clear languge sweep away immunity, (2) legislative history may focus directly on the question of state liability and show that Congress considered and firmly decided to abrogate immunity, or (3) a statute may be rendered meaningless if immunity is not abrogated.

[7] In *Owen v City of Independence,* 445 US 622; 100 S Ct 1398; 63 L Ed 2d 673 (1980), the Court held that municipalities may not assert the good faith of their officers or agents as a defense to liability under § 1983. Thus, "municipalities have no immunity from damages liability flowing from their constitutional violations". *Id.,* p 657.

prison officials and officers), *Scheuer v Rhodes,* 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974) (qualified immunity for governor and other executive officers), *Pierson v Ray,* 386 US 547; 87 S Ct 1213; 18 L Ed 2d 288 (1967) (absolute immunity for judges, qualified immunity for police officers), and *Tenney v Brandhove,* 341 US 367; 71 S Ct 783; 95 L Ed 1019 (1951) (absolute immunity for legislators). In these cases, the Court found immunity with never a suggestion that the defendants were not § 1983 persons.[8] Clearly, the explanation is that the recognized immunities are "affirmative defenses", as the Court called them in *Newport v Fact Concerts, Inc,* 453 US 247, 258; 101 S Ct 2748; 69 L Ed 2d 616 (1981). We see no reason why the Eleventh Amendment immunity of the state may not also be characterized as such an affirmative defense.

If the state is a § 1983 person and yet is entitled to immunity from suit in federal court, is § 1983 rendered meaningless with respect to the states? In *Monell, supra,* p 701, the Court stated "that municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 'be drained of meaning,' " citing *Scheuer v Rhodes, supra,* p 248.[9] In *Scheuer,* the Court expressed the

[8] In these cases, immunity depended not on the status of the defendant, but on the nature of his or her activities. See *Imbler v Pachtman,* 424 US 409, 430; 96 S Ct 984; 47 L Ed 2d 128 (1976). If the result reached in the cases turned on whether the defendant was a person under § 1983, one defendant could be a "person" in some instances but not in others, depending on their actions. We find no support for such a bifurcated application of the word "person". *Cf. City of Kenosha v Bruno,* 412 US 507, 513; 93 S Ct 2222; 37 L Ed 2d 109 (1973) (rejecting bifurcated application of "person" to municipal corporations depending on the nature of the relief sought against them).

[9] When, in *Owen v City of Independence, supra,* the Court held that municipalities had no official immunity from § 1983 damages liability, it did so on the basis of history and policy, not because § 1983 would otherwise be rendered meaningless.

concern that the supremacy of federal law could be overridden if state *officials* had absolute immunity from suit in federal court. However, with respect to the *state,* this federalism concern is negated by the fact that the state's immunity arises from the United States Constitution itself. In *Quern, supra,* p 345, the Court found that the availability of prospective relief against a state official, in accordance with *Ex parte Young,* 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908), was sufficient to keep § 1983 from being rendered "meaningless insofar as States are concerned". We thus conclude that the existence of Eleventh Amendment immunity does not, either by force of logic or by precedent, require that the word "person" in § 1983 be construed to exclude the state.

Not only are we persuaded that *Quern* does not hold that a state is not a § 1983 "person", but we find within the *Quern* opinion some evidence that the state in fact is such a person. At *Quern, supra,* p 340, the Court quoted approvingly from *Alabama v Pugh,* 438 US 781, 782; 98 S Ct 3057; 57 L Ed 2d 1114 (1978), which involved a § 1983 action for injunctive relief:

"There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit."

However, if the state is not a "person" under § 1983, suit would be barred even where there is consent constituting waiver of immunity, because § 1983 would be inapplicable to the states.[10] Simi-

_____

[10] If the state is not a § 1983 person and waives its Eleventh Amendment immunity, one might wonder if actions for retrospective relief against state officials in their official capacity would also remain barred, because in such cases the state is considered the real party in interest. See *Quern, supra,* p 345, fn 17.

larly, at *Quern, supra,* p 345, the Court states that its holding does not "render § 1983 meaningless insofar as states are concerned". However, concern that § 1983 not be meaningless as to the states only arises if § 1983 applies to the states in the first instance, *i.e.,* if states are "persons". See *Gay Student Services v Texas A & M University,* 612 F2d 160, 163, fn 3 (CA 5, 1980), *cert den* 449 US 1034; 101 S Ct 608; 66 L Ed 2d 495 (1980), and *Harris v Arizona Bd of Regents,* 528 F Supp 987, 992 (D Ariz, 1981).

Thus far, we are persuaded that the state is a § 1983 person and that the question of immunity requires separate analysis. Plaintiffs are correct in their assertion that immunity in state court from § 1983 damages liability is a question of federal law and cannot be determined on the basis of the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq. Martinez v California,* 444 US 277, 284, fn 8; 100 S Ct 553; 62 L Ed 2d 481 (1980), and *Cook v City of Detroit,* 125 Mich App 724, 730; 337 NW2d 277 (1983). The United States Supreme Court has construed § 1983 to incorporate a particular immunity defense only after careful inquiry into considerations of both history and policy. *Newport v Fact Concerts, Inc, supra,* p 259. Clearly, the sovereign immunity of the states was well established at common law at the time that § 1983 was enacted. Furthermore, we are convinced that state immunity was supported by such strong policy reasons that "Congress would have specifically so provided had it wished to abolish the doctrine". *Owen v City of Independence,* 445 US 622, 637; 100 S Ct 1398; 63 L Ed 2d 673 (1980), quoting *Pierson v Ray, supra,* p 555.

In considering the policy supporting sovereign immunity of the states from liability in their own

courts, we find a compelling analogy in the Eleventh Amendment, even though the latter provision on its face governs the federal judicial power.[11] The Eleventh Amendment is "but an exemplification" of the fundamental rule that "a State may not be sued without its consent". *Ex parte State of New York No 1,* 256 US 490, 497; 41 S Ct 588; 65 L Ed 1057 (1921), quoted in *Pennhurst State School & Hospital v Halderman,* — US —; 104 S Ct 900, 907; 79 L Ed 2d 67, 77 (1984). Therefore, we would expect the same clarity of Congressional intent to abrogate traditional sovereign immunity as the United States Supreme Court demanded (and found lacking) in *Quern, supra,* with respect to Eleventh Amendment immunity.

It would be anomalous, to say the least, that Congress would create a federal remedy to be enforced in the federal courts, but decline to give the federal courts power to enforce that remedy against the states while providing for enforcement by the state courts. Prior to the Civil Rights Act of 1871, Congress relied on the state courts to vindicate essential federal rights. As noted in *District of Columbia v Carter,* 409 US 418, 428-429; 93 S Ct 602; 34 L Ed 2d 613 (1973):

"With the growing awareness that this reliance had been misplaced, however, Congress recognized the need for original federal court jurisdiction as a means to provide at least indirect federal control over the unconstitutional actions of state officials * * *. Thus, in the final analysis, § 1 of the 1871 Act may be viewed as an effort 'to afford a federal right in federal courts because,

---

[11] We are aware that there are special "problems of federalism inherent in making one sovereign appear against its will in the courts of the other". *Pennhurst State School & Hospital v Halderman, supra,* 79 L Ed 2d 78. That such problems do not exist where a state is sued in its own courts is insufficient, we think, to change the result we reach.

by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced.' "[12]

Section 1983 did not deprive the state courts of jurisdiction to enforce federal rights,[13] but added to the power of the federal courts. *Allen v McCurry,* 449 US 90, 99; 101 S Ct 411; 66 L Ed 2d 308 (1980). Since Congress did not extend the federal power to abrogate state sovereign immunity, we think it declined also to extend the state power. Thus, we are persuaded to accept at face value the Supreme Court's statement in *Quern, supra,* p 341, that Congress did not intend "by the general language of § 1983 to override the *traditional sovereign immunity* of the States" (emphasis added). See *Thiboutot v Maine,* 405 A2d 230, 236 (Me, 1979), *aff'd* 448 US 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980), and *Kapil v Ass'n of Pennsylvania State College & University Faculties,* 68 Pa Cmwlth 287; 448 A2d 717, 720 (1982), *rev'd on other grounds,* 504 Pa 92; 470 A2d 482 (1983).

Although Congress declined to subject the states to § 1983 actions, a state may waive its immunity and consent to suit. *Pennhurst State School & Hospital, supra.* This state has retained its immunity with certain exceptions not applicable here.

---

[12] This failure by the state courts may be characterized as state procedural law, though adequate in theory, proving inadequate in practice. The Supreme Court has inferred that Congress also intended a federal remedy where state substantive law was facially unconstitutional and where state procedure was inadequate to allow full litigation of a constitutional claim. *Allen v McCurry,* 449 US 90, 100-101; 101 S Ct 411; 66 L Ed 2d 308 (1980).

[13] State courts have concurrent jurisdiction over § 1983 claims. *Martinez v California,* 444 US 277; 100 S Ct 553; 62 L Ed 2d 481 (1980). In *Maine v Thiboutot,* 448 US 1, 3, fn 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980), the Court observed that whether Congress has *obligated* the States to entertain § 1983 actions remained an unanswered question. This Court has recognized the concurrent jurisdiction of courts of this state over § 1983 claims. *Ledsinger v Burmeister,* 114 Mich App 12, 25; 318 NW2d 558 (1982), *Dickerson v Warden, Marquette Prison,* 99 Mich App 630, 634; 298 NW2d 841 (1980).

MCL 691.1407; MSA 3.996(107),[14] and *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1985). Accordingly, we conclude that, with regard to their § 1983 claim, plaintiffs have failed to state a claim upon which relief can be granted.

In absence of a federal-law remedy, plaintiffs request that we infer a monetary damages remedy under Const 1963, art 1, § 17, which states that no person shall be deprived of life, liberty or property, without due process of law. Plaintiffs rely on *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971), in which the United States Supreme Court permitted a damages action against federal agents for violations of US Const, Am IV. We decline plaintiffs' invitation, believing that the creation of the remedy that plaintiffs request is a matter that should first be addressed by our state's Supreme Court. Therefore, we hold that plaintiffs did not state a cause of action under Const 1963, art 1, § 17. Because of this disposition, we need not address plaintiffs' final issue.

Affirmed.

BRONSON, J., concurred.

N. J. KAUFMAN, J. *(concurring)*. I concur separately in the well-written opinion of Presiding Judge WAHLS, based on *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1985).

---

[14] With respect to the state, the statute provides:

"Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

As originally enacted, 1964 PA 170, § 7, exceeded the scope of the title of the act. *Maki v City of East Tawas*, 385 Mich 151; 188 NW2d 593 (1971). The constitutional defect was cured by 1970 PA 155. Common-law sovereign immunity survived until *Pittman v City of Taylor*, 398 Mich 41; 247 NW2d 512 (1976).