*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID OMAR ADAMS,

Defendant-Appellant.

FOR PUBLICATION
June 15, 2023
9:05 a.m.

No. 359017
Ionia Circuit Court
LC No. 2019-017789-FC

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

MURRAY, J.

Defendant appeals by right his conviction of one count of assault of a prison employee, MCL 750.197c. Before trial, defendant moved to dismiss the charge on double jeopardy grounds, arguing that he had previously been administratively sanctioned by the Michigan Department of Corrections (MDOC) for the same assault. The trial court denied defendant's motion, and on appeal defendant continues to argue that to convict him of this charge violated his right not to be subjected to multiple punishments for the same conduct. For the reasons explained below, we affirm defendant's conviction.

## I. RELEVANT FACTS AND PROCEEDINGS

The conviction challenged on appeal resulted from defendant's assault of a corrections officer at Ionia Correctional Facility. It was undisputed that the corrections officer was working in defendant's housing unit when defendant repeatedly stabbed the officer with a plastic ink pen, causing significant injuries. Following the incident, the MDOC instituted disciplinary action against defendant, resulting in his being internally charged two Class I misconducts: assault resulting in serious physical injury (staff victim) and possession of a weapon in violation of MDOC policy directive 03.03.105A. An administrative law judge conducted a prison misconduct hearing and found defendant guilty of both misconduct charges and imposed a punishment of 20 days of punitive segregation (solitary confinement) and 60 days of lost privileges.

Sometime thereafter defendant was criminally charged with assault of a prison employee, MCL 750.197c. Before trial, defendant moved that the case be dismissed, arguing various

grounds, including that the state and federal constitutions' double jeopardy clauses[1] prevented him from being criminally prosecuted after having already been punished for the same assault through prison disciplinary proceedings. In denying defendant's motion, the trial court opined that prosecuting defendant on this charge did not violate either constitutional provision, as the parties involved in the two charges were different, as were the objectives of the hearings: the objective of the MDOC proceeding was to provide a safe prison environment and the objective of the prosecution's proceeding was to enforce criminal law. Ultimately, a jury found defendant guilty of assault on a prison employee, and defendant pursued this appeal.

## II. ANALYSIS

A double-jeopardy argument presents a question of law subject to de novo review. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008). Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *Ream*, 481 Mich at 227 & n 1. The guarantee protects a defendant from both successive prosecutions for the same offense and multiple punishments for the same offense. *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The purpose of the double-jeopardy protection against multiple punishments for the same offense is to protect a defendant's interest in not enduring more punishment for a crime than was intended by the Legislature. *People v Calloway*, 469 Mich 448, 451; 671 NW2d 733 (2003). These clauses, however, only protect "against the imposition of multiple *criminal* punishments for the same offense." *Helvering v Mitchell*, 303 US 391, 399; 58 S Ct 630; 82 L Ed 917 (1938) (emphasis in original). Accordingly, the double-jeopardy clauses generally do not prohibit subjecting a defendant to both criminal and civil penalties for the same act. *People v Hellis*, 211 Mich App 634, 640, 644; 536 NW2d 587 (1995).

In light of this settled law, the first question to be answered in the double jeopardy analysis is whether the first punishment was criminal or civil, which involves a question of legislative intent. *People v Earl*, 495 Mich 33, 38; 845 NW2d 721 (2014) ("When determining whether the Legislature intended for a statutory scheme to impose a civil remedy or a criminal punishment, a court must first consider the statute's text and its structure"); *Hudson v United States*, 522 US 93, 99; 118 S Ct 488; 139 L Ed 2d 450 (1997). On this point, our Court recognized long ago that "prison disciplinary proceedings are not part of a criminal prosecution and thus do not call into play all those rights due a defendant in a criminal prosecution." *Dickerson v Warden, Marquette Prison*, 99 Mich App 630, 635; 298 NW2d 841 (1980), citing *Wolff v McDonnell*, 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974). See also *People v Shastal*, 26 Mich App 347, 350; 182 NW2d 638 (1970) ("Defendant was not subjected to double jeopardy as the procedure whereby defendant's good time was forfeited was conducted as the statute requires, in an administrative proceeding and not in a criminal proceeding in a court of justice").

Stated differently, prison administrative proceedings and the corresponding punishments have been consistently treated as purely administrative and have been found not to invoke double jeopardy and other constitutional protections. See *People v Wyngaard*, 462 Mich 659, 663; 614 NW2d 143 (2000) (the defendant was sanctioned at an administrative hearing for possession of marijuana and later prosecuted and convicted of possession of contraband); *People v Bellafant*,

---

[1] US Const, Am V; Const 1963, art 1, § 15.

105 Mich App 788, 790; 307 NW2d 422 (1981) (criminal charge of assault of a prison employee held not to violate double jeopardy despite administrative forfeit of earned good time as a result of the same assault); *Pfefferle v Corrections Comm*, 86 Mich App 366, 373; 272 NW2d 563 (1976) *People v Bachman*, 50 Mich App 682, 684; 213 NW2d 800 (1973) (holding that administrative forfeiture of earned good time as punishment for escape from prison combined with a conviction and sentence in a criminal proceeding was not violative of the Fifth Amendment prohibition against double jeopardy).[2]  Because "[p]rison disciplinary hearings are not part of a criminal prosecution . . . [they] do not implicate double jeopardy concerns." *Lucero v Gunter*, 17 F3d 1347, 1351 (CA 10, 1994).

Our earlier decisions, though somewhat vintage, accurately reflect what is still true today, that is, that the MDOC policies reflect an intent to create an administrative/civil punishment for violation of prison policy.  For example, the MDOC policy directive for prisoner discipline cites multiple sources of authority, including MCL 791.203 (commission, director of corrections, qualifications, salary, powers, and duties); MCL 791.206 (promulgation of rules); MCL 791.251 *et seq*., MCL 800.33 (record of major misconduct charges; sentence reduction; disciplinary credits); and various administrative rules.  The cited statutes describe how the rules are enforced under the administrative procedures act by a chief administrative officer.  See MCL 791.203; MCL 791.206.  Additionally, the policy directive explicitly requires that prison misconduct that constitutes a felony must be referred to the appropriate law enforcement agency, as well as pursued through the Department disciplinary process.  This is proof that the administrative punishments are intended to be civil in nature, but that a *separate* referral for possible criminal prosecution should also occur.

Additionally, solitary confinement has been commonly used as an administrative remedy to safeguard prisoners and corrections officers and maintain the safety of a prison system.  The policy directive specifically lists various types of confinement, including solitary confinement, as possible disciplinary sanctions for each class of misconduct offenses, and the policy directives themselves have been established to protect the management and control of state penal institutions.  See MCL 791.206(d).  More specifically, solitary confinement is defined in the MDOC policy directive as, "cells used to physically separate prisoners with special management needs from the general population and limit that prisoner's movement inside the institution. *Such confinement is used to achieve effective administrative management, maximum disciplinary control, and*

---

[2] The federal courts are uniform in the conclusion that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct." *United States v Simpson*, 546 F3d 394, 398 (CA 6, 2008).  See also *United States v Hernandez-Fundora*, 58 F3d 802, 806-07 (CA 2, 1995); *United States v Newby*, 11 F3d 1143, 1144-46 (CA 3, 1993); *Patterson v United States*, 183 F2d 327, 328 (CA 4, 1950); *United States v Galan*, 82 F3d 639, 640 (CA 5, 1996); *Garrity v Fiedler*, 41 F3d 1150, 1152-53 (CA 7, 1994); *United States v Brown*, 59 F3d 102, 103-05 (CA 9, 1995); *Fogle v Pierson*, 435 F3d 1252, 1261-62 (CA 10, 2006); *United States v Mayes*, 158 F3d 1215, 1219-1225 (CA 11, 1998). Accord:  *Brown v State*, 172 NE3d 1273,  1276 (Ind App, 2021) ("Every United States Circuit Court to consider the issue has held that 'prison discipline does not preclude a subsequent criminal prosecution or punishment for the same acts.' "), quoting *Garrity v Fiedler*, 41 F3d 1150, 1152 (CA 7, 1994).

*individual prisoner protection.*" (Emphasis added.) We hold that the intent in providing punishment for violation of prison policies is to provide a civil punishment, as the punishment is primarily for discipline and other recognized administrative benefits of the penal institution. See *Brown*, 172 NE3d at 1277 ("Given the non-punitive purpose ("maintenance of order") of the disciplinary provisions, the clear acknowledgement that criminal prosecution could follow, and the delegation of disciplinary authority to an administrative agency, the statutory scheme indicates a preference that the sanctions be considered civil.").

However, even though defendant's prison disciplinary proceeding and punishment were civil in nature, there are some very limited circumstances in which punishments imposed in a civil process may still raise double jeopardy concerns. Thus, although a civil punishment is presumed not to invoke double jeopardy protections, it may be shown to be equivalent to a criminal punishment by the "clearest proof" that the penalty is "so punitive in purpose or effect that it is rendered criminal." *People v Acoff*, 220 Mich App 396, 399; 559 NW2d 103 (1996) (quotation marks and citation omitted). Specifically, where the legislative body "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 US at 99 (quotation marks and citations omitted). The *Hudson* Court identified several factors to be used as guideposts in making such a determination:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." [*Id.* at 99-100, quoting *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963).]

These factors are only "considered in relation to the statute on its face," and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (quotation marks and citations omitted). In addition, because the *Hudson* Court described these factors as "guideposts," most courts undertaking this analysis have recognized the flexibility in applying them, particularly in the prison discipline context. See, e.g., *United States v Mayes*, 158 F3d 1215, 1224 (CA 11, 1998) ("We have some flexibility in determining the extent that we choose to utilize the considerations enunciated in *Kennedy* for purposes of our double jeopardy analysis"), *Porter v Coughlin*, 421 F3d 141, 147 (CA 2, 2005) ("It is particularly appropriate to apply the factors flexibly in the context of prison discipline cases, which "do not fit neatly into the matrix of double jeopardy doctrine . . . because in the prison context, virtually any form of sanction seems 'criminal' and 'punitive' as we commonly understand those terms"), quoting *Mayes*, 158 F3d at 1223, and *State v Jones*, 230 So3d 22, 27 (Fla App, 2017) (recognizing the flexibility in applying the *Hudson* factors, particularly in the prison discipline context).

Considering the relevant *Hudson* factors, we conclude that the administrative punishment authorized by the policy did not transform the civil remedy into a criminal punishment. With

respect to factors 1, 3, and 5, the sanction at issue clearly constitutes a restraint on a prisoner's already limited freedom, some state of mind is at issue when engaging in an assaultive act, and there is an existing criminal statute penalizing this act.[3] Nevertheless, the remaining factors strongly suggest that the administrative punishment was not criminal.

For instance, although segregation involves an affirmative restraint on a prisoner, it does not extend the length of sentence handed down by the trial court. And though the prisoner himself may view it only as punishment, this type of punishment has recognized administrative purposes. "Additionally, as explained in *Mayes*, these types of penalties are largely intended to keep order. To the extent deterrence is a happy side effect of that goal, this does not transform the penalties into criminal punishment for purposes of a double jeopardy analysis." *Jones*, 230 So3d at 29, citing *Hudson*, 522 US at 105 ("[T]he mere presence of [the purpose of deterrence], is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' "). *Haney v United States*, 999 A2d 48, 50 (DC App, 2010) ("federal circuits have held that most of the *Hudson* factors cannot be weighed equally in cases involving inmates because of the special circumstances inherent in a jail setting. These courts have concluded that discipline imposed by penal institutions is remedial and thus civil in nature. Specifically, in a prison situation, remedial and punitive interests are inextricably intertwined and any form of sanction may seem punitive even where the discipline is remedial."). Because we are dealing with a punishment in the prison context, it is easy to conclude that there are other significant civil purposes to this administrative punishment.

Finally, with respect to factor 7, we conclude that the punishment in no manner appears excessive in relation to the alternative purpose it serves. Defendant admitted that he violently stabbed a corrections officer in the side and back of his head multiple times. The nature of defendant's conduct triggered the very reason why the policy directive was implemented, and it is difficult to imagine a more important penological basis to segregate an individual from prison staff and other inmates. Further, the sanction imposed on defendant complied with the policy directive stating that solitary segregation cannot exceed 10 days for each violation or 20 days for all violations arising from a single incident. Additionally, it states that loss of privileges cannot exceed 30 days for each violation or 60 days for all violations arising from a single incident. Defendant's punishment neither exceeded the available administrative remedy, nor the important purposes served by administrative segregation.

For these reasons, we conclude that the double jeopardy protections afforded by the state and federal constitutions were not implicated when the state brought criminal charges against defendant based upon the same conduct resulting in his prior administrative confinement. There was not the "clearest proof" that the administrative punishment defendant received under MDOC policies was criminal. As a result, the trial court did not abuse its discretion in denying defendant's motion to dismiss the charges.

---

[3] The existence of a criminal penalty, however, is not near enough alone to transform a civil punishment into a criminal one. See *Hudson*, 522 US at 105, and *Williams v State*, 153 Idaho 380, 388; 283 P3d 127 (2012).

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Michael F. Gadola