BROWN v CONSIDINE

Docket No. 45744. Submitted November 13, 1980, at Detroit.—Decided August 6, 1981.

On June 2, 1976, Bernice Brown executed an agreement to arbitrate, in accordance with the medical malpractice arbitration act, all claims arising out of care given her by "the hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate". On December 22, 1976, after Mrs. Brown's stay in the hospital, her doctor, Basil Considine, Jr., executed a participation agreement with the hospital agreeing to arbitrate claims of medical malpractice. Bernice and William Brown brought an action against Dr. Considine and Harper-Grace Hospitals, Harper Hospital Division in the Wayne Circuit Court alleging medical malpractice. The court, Irwin H. Burdick, J., granted summary judgment for defendants on the basis that arbitration was plaintiffs' exclusive remedy. Plaintiffs appealed. *Held:*

1. The agreement does not constitute a contract of adhesion.

2. The medical malpractice arbitration act is constitutional.

3. The arbitration agreement did not cover the claim against Dr. Considine since, at the time of its execution, he had not agreed to the arbitration of claims against him.

Affirmed in part and reversed in part.

1. ARBITRATION — PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — ADHESION CONTRACTS — STATUTES.

The medical malpractice arbitration agreement authorized by the medical malpractice arbitration act is not an adhesion contract (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

2. ARBITRATION — PHYSICIANS AND SURGEONS — CONSTITUTIONAL LAW — STATUTES.

The medical malpractice arbitration act is constitutional (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 376. Arbitration of medical malpractice claims. 84 ALR3d 375.

[3] 5 Am Jur 2d, Appeal and Error § 548.

[4] 17 am Jur 2d, Contracts §§ 11-13.

3. APPEAL — PRESERVING QUESTION.

> The general rule that the appellate courts will not consider an issue raised for the first time on appeal should not be followed where consideration of a claim not previously raised is necessary to a proper determination of the case.

4. CONTRACTS — MUTUALITY.

> No contract can arise except on the expressed mutual assent of the parties; a contract is made when both parties have executed and accepted it.

5. ARBITRATION — PHYSICIANS AND SURGEONS — ARBITRATION AGREEMENTS — JUDICIAL CONSTRUCTION.

> A medical malpractice arbitration agreement covering claims arising from treatment rendered by "those of [the hospital's] independent staff doctors and consultants who have agreed to arbitrate" does not cover a claim against an independent staff doctor who did not agree to arbitrate until after the alleged act of malpractice.

*Gregory J. Zierk,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *J. P. O'Leary* and *Raymond W. Morganti),* for defendant Considine.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Donald A. Ducastel),* for defendant Harper-Grace Hospitals.

Before: BRONSON, P.J., and J. H. GILLIS and CYNAR, JJ.

PER CURIAM. On July 18, 1978, plaintiffs filed a complaint against defendants in the Wayne County Circuit Court alleging malpractice arising in the course of outpatient radiation therapy treatments received by plaintiff, Bernice Brown. Defendants filed a motion for accelerated judgment on the basis that Mrs. Brown had executed an agreement to arbitrate in accordance with Michigan's medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* The lower

court held that the malpractice arbitration statute was constitutional and the contract recognized therein did not constitute a contract of adhesion. Consequently, on June 1, 1979, the court entered an order granting defendants' motion for accelerated judgment. From this order, plaintiffs appeal as of right.

As concerns the contract of adhesion claim, all members of this panel have previously held that an arbitration agreement is not invalid on this basis. As to the constitutional claim, two of us have concluded that the statute presents no constitutional problems while Judge Bronson is of the contrary opinion. Judge Gillis's views on these problems are set forth in *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981), while Judges Cynar and Bronson have expressed their positions in their respective opinions in *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981). Since these are the only issues raised in respect to the hospital, the lower court's order granting accelerated judgment in its favor is affirmed.

As to the individual doctor, another claim of error is asserted. The arbitration agreement executed by Mrs. Brown provided in pertinent part:

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate."

In this case, Mrs. Brown signed the arbitration agreement on June 2, 1976. However, it was not until December 22, 1976, that Dr. Considine signed a participation agreement with the hospital agree-

ing to arbitrate claims of medical malpractice. Plaintiffs contend that, if the arbitration agreement is valid, it nonetheless does not cover the action instituted against Dr. Considine. They argue that since Considine had not agreed to arbitrate as of June 2, 1976, Mrs. Brown's contract with the hospital extends no benefit to him.

Preliminarily, we note that this issue was not raised in the lower court. As a general rule, the appellate courts of this state will not consider an issue raised for the first time on appeal. However, this rule is not inflexible and, where consideration of a claim not previously raised is necessary to a proper determination of the case, the general principle will not be applied. *Dation v Ford Motor Co,* 314 Mich 152, 160-161; 22 NW2d 252 (1946), *Felcoskie v Lakey Foundry Corp,* 382 Mich 438, 442; 170 NW2d 129 (1969). In the case *sub judice,* the scope of the arbitration agreement must be addressed to properly and fully resolve this matter. Furthermore, the issue does not require an analysis of facts not of record so that the factual posture of this case presents no impediment to our reaching the problem.

It is basic to the law of contracts that no contract can arise except on the expressed mutual assent of the parties. *Woods v Ayres,* 39 Mich 345, 351 (1878). A contract is made when both parties have executed or accepted it, and not before. *Holder v Aultman, Miller & Co,* 169 US 81, 89; 18 S Ct 269; 42 L Ed 669, 672 (1898). As stated in 17 Am Jur 2d, Contracts, § 15, p 353:

"Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust on him without his consent. The rule that there must be a meeting of the minds to form a contract involves a common understanding of the identities of

the parties. If one of the supposed parties is wanting, there is an absence of one of the formal constituents of a legal transaction, and there is no contract." (Footnotes omitted.)

There is no doubt that the agreement in question covers the hospital. The agreement specifically provides for arbitration between "this hospital and I". In respect to Dr. Considine, however, the agreement is ambiguous at best. We must determine whether the phrase "who have agreed to arbitrate" includes independent physicians who agreed to arbitrate only after the contract with the hospital was entered into and following the alleged acts of malpractice. Where a contract is prepared on behalf of one of the parties, any ambiguity therein will be strictly construed against that party. *Keller v Paulos Land Co,* 381 Mich 355, 362; 161 NW2d 569 (1968). In the instant case, plaintiffs had nothing to do with the preparation of the arbitration agreement with the hospital.

We agree with plaintiffs that under the contract as written, Dr. Considine is not within the scope of the agreement. Taken literally, the use of the term "who have agreed" refers to an action taken some time in the past. Furthermore, the arbitration agreement specifically refers to claims "which may arise in the future". However, if Dr. Considine is allowed to claim the benefit of the agreement, at least insofar as he is concerned, the arbitration contract would be covering a claim of malpractice based upon acts which have occurred in the past. The arbitration agreement does not cover past acts of malpractice.

We further believe that the construction advanced by defendants exceeds the range of expectations of any knowledgeable patient who would

read and execute the agreement. A hospital is not liable for the acts of a staff physician on a respondeat superior theory. *Ravenis v Detroit General Hospital,* 63 Mich App 79, 83-84; 234 NW2d 411 (1975), *lv den* 395 Mich 824 (1976), *Bivens v Detroit Osteopathic Hospital,* 77 Mich App 478, 487; 258 NW2d 527 (1977), *rev'd on other grounds* 403 Mich 820 (1978). Given that it is more likely that a patient will be harmed by his own doctor's negligence, as opposed to the independent negligence of the hospital, it is plausible that a given patient would agree to arbitrate with the hospital, but not the doctor. Under defendant doctor's proposed construction, even a patient who had consciously made this choice, knowing that his doctor had not agreed to arbitrate, could nonetheless lose his right to sue the physician in court if the latter subsequently executed a participation agreement with the hospital. Defendant doctor's construction, then, allows the addition of new parties to the surprise of the patient. The unexpressed intention of Dr. Considine cannot bind plaintiffs anymore than Mrs. Brown's unexpressed intention not to arbitrate if malpractice actually did occur can be used to negate the agreement with the hospital.

Defendants also argue that this question was resolved adversely to plaintiffs' position in *Kukowski v Piskin,* 99 Mich App 1; 297 NW2d 612 (1980). We find *Kukowski* easily distinguishable. In *Kukowski,* plaintiff asserted that she was unaware of her doctor's agreement to arbitrate, had entered into agreements with two hospitals only, and had not agreed to arbitrate with the doctor. The arbitration agreements entered into by the plaintiff in *Kukowski* were identical to the one under consideration here and specifically referred to independent staff doctors "who have agreed to arbitrate".

Thus, the plaintiff in *Kukowski* was attempting to ignore a portion of the agreements she had executed. No allegation was made by the plaintiff in *Kukowski* that, at the time she executed the arbitration agreements with the hospitals, her physician had not yet agreed to arbitrate. If the malpractice arbitration act is constitutional, as a majority of this panel believes, *Kukowski* is correctly decided and is simply not material to the issue under consideration here.

Defendants also rely on the principle that arbitration agreements are to be liberally construed in favor of arbitrability. See *Maryland Casualty Co v McGee,* 32 Mich App 539; 189 NW2d 44 (1971), *Detroit Automobile Inter-Ins Exchange v Reck,* 90 Mich App 286; 282 NW2d 292 (1979), *lv den* 407 Mich 870 (1979). The question in this case, however, is not the arbitrability of a particular issue where a concededly binding contract between the parties to arbitrate exists. Instead, we are confronted with the problem of whether an arbitration contract even exists in respect to Dr. Considine.

Defendants point to the loss of benefits provided by arbitration if the doctor is subject to suit in the courts. The fact is, however, that nothing in the medical malpractice arbitration act requires a plaintiff who has agreed to arbitrate with the hospital to also arbitrate with the doctor. Indeed, had Dr. Considine never executed a participation agreement with the hospital, the need for litigation in two forums would be obvious.

Affirmed in part; reversed in part. No costs, since, at the time this case was submitted, the issues raised involved substantial problems of statutory construction not previously addressed.