### HAMPTON v STATE OF MICHIGAN

Docket No. 73024. Submitted December 6, 1984, at Lansing.—Decided August 19, 1985. Leave to appeal applied for.

Alvin Hampton, an inmate at Riverside Correctional Facility, committed suicide. Alma Hampton, the personal representative of the estate of Alvin Hampton, deceased, filed suit against the State of Michigan in the Court of Claims alleging that defendant failed to properly observe and provide psychiatric care to the decedent so as to prevent the suicide, thus violating decedent's rights to due process and equal protection and his right to be free from cruel and unusual punishment. The court, Thomas L. Brown, J., found defendant liable under 42 USC 1983 for the death of the decedent and awarded plaintiff $75,000, plus interest. Defendant appealed. *Held:*

1. The State of Michigan is not a "person" within the meaning of 42 USC 1983. That section therefore is inapplicable against the state and the trial court's judgment finding defendant liable under that section must be reversed.

2. Plaintiff's civil rights claim against the state is also barred by governmental immunity.

Reversed.

J. H. GILLIS, P.J., disagreed with the majority's conclusion that the state is not a person for purposes of 42 USC 1983, but concurred in the reversal on the ground that the action is barred by governmental immunity.

#### OPINION OF THE COURT

1. CIVIL RIGHTS — ACTIONS.

A plaintiff, in order to state a claim upon which relief may be granted in an action alleging a violation of 42 USC 1983, must allege (1) deprivation of rights, privileges, or immunities secured by the constitution and laws (2) by a "person" (3) acting under color of state law (42 USC 1983; GCR 1963, 117.2[1]; MCR 2.116[C][8]).

---

#### REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Civil Rights § 261 *et seq.*

See the annotations in the ALR3d/4th Quick Index under topic Discrimination.

2. CIVIL RIGHTS — STATES — "PERSON".
   The term "person" in 42 USC 1983 does not include states and
   state agencies.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY J. H. GILLIS, P.J.

3. CIVIL RIGHTS — STATES — "PERSON".
   *A state may be considered a "person" under a federal civil rights
   statute for violation of federal constitutional rights (42 USC
   1983).*

*Goodman, Eden, Millender & Bedrosian* (by *William H. Goodman),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Louis J. Porter* and *George H. Weller,* Assistants Attorney General, for defendant.

Before: J. H. GILLIS, P.J., and M. J. KELLY and K. N. SANBORN,* JJ.

K. N. SANBORN, J. Defendant appeals as of right from a July 18, 1983, judgment entered following a nonjury trial in the Court of Claims. The trial court found defendant liable under 42 USC 1983 for the suicide death of plaintiff's decedent, Alvin Hampton, which occurred on December 6, 1978, while decedent was serving a prison term at the Riverside Correctional Facility. The court awarded plaintiff $75,000, plus interest.

Defendant contends that the Court of Claims was without jurisdiction to hear a claim brought against the State of Michigan under 42 USC 1983 and that the state is not a "person" within the meaning of § 1983. We find that the state is not a "person" within the meaning of § 1983 and that, in any event, governmental immunity bars plaintiff's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

§ 1983 claim against the state. Accordingly, we reverse.

The case was tried solely on plaintiff's allegation that defendant violated decedent's civil rights under § 1983. The § 1983 claim was based on defendant's alleged failure to properly observe and provide psychiatric care to the decedent, so as to prevent the suicide, thus violating decedent's rights to due process and equal protection and right to be free from cruel and unusual punishment under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

42 USC 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The statute originally appeared as part of the Civil Rights Act of 1871. The purpose of § 1983 when enacted was to ensure that an individual had a cause of action for deprivation of his constitutional rights against those who represented the state in some capacity. See *Chapman v Houston Welfare Rights Organization,* 441 US 600, 617-618; 99 S Ct 1905; 60 L Ed 2d 508 (1979). In order to state a claim upon which relief may be granted under MCR 2.116(C)(8), the plaintiff in a § 1983 action must allege (1) deprivation of any rights, privileges, or immunities secured by the constitution and laws, (2) by a "person", (3) acting under color of state law.

Whether a state or any of its agencies is a

"person" for purposes of § 1983 has been the subject of ongoing debate in both federal and state courts. In *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979), the Supreme Court reaffirmed the rule that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. 440 US 337. The court held that Congress did not intend "by the general language of § 1983 to override the traditional sovereign immunity of the States". 440 US 341. It further stated:

"There is no question that both the supporters and opponents of the Civil Rights Act of 1871 believed that the Act ceded to the Federal Government many important powers that previously had been considered to be within the exclusive province of the individual States. * * * But neither logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants, a leap from this proposition to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States. * * * Given the importance of the States' traditional sovereign immunity, if in fact the Members of the 42d Congress believed that § 1 of the 1871 Act overrode that immunity, surely there would have been lengthy debate on this point and it would have been paraded out by the opponents of the Act along with the other evils that they thought would result from the Act. Instead, § 1 passed with only limited debate and not one Member of Congress mentioned the Eleventh Amendment or the direct financial consequences to the States of enacting § 1. We can only conclude that this silence on the matter is itself a significant indication of the legislative intent of § 1." (Footnotes omitted.) 440 US 341-343.

Although *Quern* involved Eleventh Amendment immunity, which, of course, is inapplicable to suits

brought in state court, other appellate courts have interpreted the *Quern* language that § 1983 was not intended to abrogate existing immunity of the states, as tantamount to a holding that a state is not a "person" within § 1983. Indeed, this was the position taken by Justice Brennan, concurring in *Quern.* He noted that in light of Congress's power to abrogate the constitutional immunity of the states by providing for private suits against states and state officials, the majority's holding that § 1983 was not intended to abrogate Eleventh Amendment immunity was, in effect, a holding that Congress did not intend the term "person" to include states.

"If a State were a 'person' for purposes of § 1983, therefore, its immunity under the Eleventh Amendment would be abrogated by the statute." (Footnote omitted.) 440 US 350-351, Justice Brennan concurring.

It is true that *Quern* may be interpreted as dealing only with the states' Eleventh Amendment immunity, thus leaving open the possibility that Congress intended to permit § 1983 actions against states in state courts. We find it unlikely, however, that Congress would have intended to enact a statute creating a remedy for violation of civil rights, while at the same time precluding private individuals from bringing actions under the statute against states in federal court but permitting such actions against states in state courts. We believe it is more likely that § 1983 was intended to create and insure the existence of a remedy against persons acting under color of state law rather than against the state itself.

We recognize that two panels of this Court have held that a state is a "person" within § 1983. *Smith v Michigan,* 122 Mich App 340; 333 NW2d

50 (1983); *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371 NW2d 876 (1985).[1] However, the majority of other states which have addressed the question have reached the opposite conclusion. See *Mezey v State,* 161 Cal App 3d 1060; 208 Cal Rptr 40 (1984); *Hambley v State,* 459 So 2d 408 (Fla App, 1984); *Fetterman v University of Connecticut,* 192 Conn 539; 473 A2d 1176 (1984); *Shaw v City of St Louis,* 664 SW2d 572 (Mo App, 1983); *Rains v State of Washington,* 100 Wash 2d 660; 674 P2d 165 (1983); *Thomas v New York Temporary State Comm on Regulation of Lobbying,* 83 App Div 2d 723; 442 NYS2d 632 (1981), *aff'd* 56 NY2d 656; 451 NYS2d 708; 436 NE2d 1310 (1982); *DeVargas v State,* 97 NM 447; 640 P2d 1327 (Ct App, 1981); *State v Green,* 633 P2d 1381 (Alaska, 1981); *Boldt v State,* 101 Wis 2d 566; 305 NW2d 133 (1981), *cert den* 454 US 973; 102 S Ct 524; 70 L Ed 2d 393 (1981); *Thiboutot v State of Maine,* 405 A2d 230 (Me, 1979), *aff'd on other grounds* 448 US 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980); *Edgar v State,* 92 Wash 2d 217; 595 P2d 534 (1979), *cert den* 444 US 1077; 100 S Ct 1026; 62 L Ed 2d 760 (1980); *Taylor v Mitzel,* 82 Cal App 3d 665; 147 Cal Rptr 323 (1978).

While both positions have merit, it is our opinion based on *Quern* and decisions of other states

---

[1] The Court in *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 375 NW2d 876 (1985), held that a state is a "person" but that the action was barred by the state's traditional sovereign immunity, citing *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979). Both *Smith v Michigan,* 122 Mich App 340; 333 NW2d 50 (1983), and *Karchefske, supra,* relied in part on *Monell v Dep't of Social Services of the City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), which held that municipalities are "persons" to which § 1983 applies. The Supreme Court in *Quern, supra,* however, emphasized that the Court's "holding in *Monell* was 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes,' 436 US at 690, fn 54 * * *".
This Court has issued a certification of conflict order pursuant to Administrative Order No. 1984-2, 418 Mich lxxxii, on the issue of whether the state is a person within 42 USC 1983.

that the term "person" in § 1983 was not intended to include states and state agencies.

Reversed. No costs.

M. J. KELLY, J., concurred.


J. H. GILLIS, P.J. *(concurring in part and dissenting in part).* I disagree with the majority's conclusion that the state is not a "person" for purposes of 42 USC 1983. Rather, I would adopt the reasoning advanced by Judge WAHLS in *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371 NW2d 876 (1985), on this point. However, because I agree that this action against the state is precluded on the grounds of governmental immunity, *Ross v Consumers Power Co,* 420 Mich 567; 363 NW2d 641 (1985), I concur in the reversal.