de SANCHEZ v GENOVES-ANDREWS

de SANCHEZ v DEPARTMENT OF MENTAL HEALTH

Docket Nos. 80539, 80540. Submitted November 19, 1985, at Lansing. Decided July 7, 1987. Leave to appeal applied for.

Francine Cullari de Sanchez and Steven Jason, co-personal representatives of the estate of Thomas A. Baltus, deceased, filed a complaint in the Washtenaw Circuit Court against Dr. Aurora Genoves-Andrews and in the Court of Claims against the State of Michigan, Department of Mental Health, for the wrongful death of plaintiffs' decedent, who committed suicide while residing at the state's Ypsilanti Regional Psychiatric Hospital. The decedent had been involuntarily admitted to the hospital following an attempted suicide and was placed in the care of defendant Genoves-Andrews and other employees of the hospital. The defendants moved for summary judgment in each case on the basis that plaintiffs failed to plead facts sufficient to avoid the application of the doctrine of governmental immunity. The circuit court, Henry T. Conlin, J., granted the motion by Dr. Genoves-Andrews and the Court of Claims, Robert Holmes Bell, J., granted the state's motion. Plaintiffs appealed from both orders granting summary judgment. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. Plaintiffs' complaint in the Court of Claims sufficiently pled facts in avoidance of immunity under the defective build-

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 2, 22 *et seq.*

Am Jur 2d, Incompetent Persons §§ 8 *et seq.*; 31 *et seq.*

Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 *et seq.*; 145, 150 *et seq.*

Am Jur 2d, States, Territories, and Dependencies §§ 99 *et seq.*

Liability of mental care facility for suicide of patient or former patient. 19 ALR4th 7.

States immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.

Immunity from liability for damages in tort of state or governmental unit or agency in operating hospital. 15 ALR2d 203.

See also the annotations in the Index to Annotations under "Discretionary Function or Duty"; Governmnetal Immunity or Privilege.

ings exception to governmental immunity by alleging a structural defect in the hospital in light of the uses or activities for which the wards in the hospital were specifically designed. Summary judgment as to the state on this ground was inappropriate.

2. Plaintiffs stated facts necessary to establish a contract between plaintiffs' decedent and the hospital. Nonetheless, summary judgment was appropriate with respect to plaintiffs' breach of contract claim against the state because certain statutory provisions necessitate a finding that, as a matter of law, no contract existed. Since the hospital was legally obligated to admit plaintiffs' decedent, its promise to do so does not amount to sufficient consideration for a contract. The element of mutuality of assent was lacking on the part of the state.

3. While the state is a "person" under 42 USC 1983, the state is immune from this type of suit by reason of the state's sovereign immunity. Summary judgment for failure to state a claim was appropriate with respect to plaintiffs' § 1983 claim against the state.

4. Summary judgment in favor of Genoves-Andrews on plaintiffs' § 1983 claim was erroneous. Plaintiffs' allegations that the doctor intentionally, willfully, wantonly, recklessly, maliciously and negligently violated the constitutional rights of the decedent in violation of § 1983 by failing to provide the medical and psychiatric care necessary to protect the decedent from his suicidal tendencies are sufficient to state a claim. The allegations satisfy the two-part test for ·evaluating such claims: alleging deliberate indifference and a serious medical need.

5. The circuit court did not err in granting defendant Genoves-Andrews' motion for summary judgment with respect to the negligence claim. The doctor's decisions to discontinue the one-to-one suicide precaution watch and to allow plaintiffs' decedent to attend the restroom unsupervised were discretionary, thus, the doctor was immune from liability for any negligence arising out of those decisions.

6. Summary judgment as to the state and as to Genoves-Andrews was appropriate in regard to plaintiffs' contention that the defendants were liable for the abuse perpetrated upon the decedent pursuant to MCL 330.1722; MSA 14.800(722). A claim against the state pursuant to § 722 is not "appropriate civil relief" in this instance since the claim is based on the state's action or inaction in allowing the alleged abuse to occur. The state is immune from tort liability in this instance since, at the time of decedent's death, it was engaged in a governmental function. Because a suit for damages would otherwise be available against an individual state employee who is accused of

abusing a mental patient, such a suit is "appropriate civil relief." However, plaintiffs failed to sufficiently allege that the acts perpetrated by Genoves-Andrews on their decedent constituted "abuse" under § 722 of the Mental Health Code.

The orders of the circuit court and the Court of Claims are affirmed in part, reversed in part and remanded.

J. D. PAYANT, J., concurred but wrote separately to indicate his belief that a state is not a "person" under 42 USC 1983.

T. M. BURNS, P.J., concurred but wrote separately to indicate his belief that it is misleading to describe "medical decision-making" as "inherently discretionary." He believes that it is inappropriate to emphasize such terminology instead of looking to the facts of the case in light of the general guidelines of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984).

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL AGENCIES — TORTS.
   Governmental agencies are immune from tort liability to the extent that they are engaged in governmental functions (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — DANGEROUS OR DEFECTIVE BUILDINGS.
   Governmental agencies are statutorily liable for personal injuries arising out of dangerous or defective conditions in public buildings under the agency's control; a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices; whether a part of a public building is dangerous or defective is to be determined in light of the uses or activities for which the building is specifically assigned (MCL 691.1406; MSA 3.996[106]).

3. GOVERNMENTAL IMMUNITY — TRIAL — PLEADING.
   A plaintiff must plead facts in avoidance of governmental immunity where immunity from suit is at issue in the action.

4. MENTAL HEALTH — HOSPITALS — STATE.
   A person must be admitted to a state hospital after execution of an application and physician's certificate for hospitalization of the person; the hospital must then provide the person with a psychiatric examination within twenty-four hours of his admission; if a psychiatrist certifies that the person is one who requires treatment, the person's hospitalization may continue pending a court hearing (MCL 330.1423, 330.1430, 330.1468; MSA 14.800[423], 14.800[430], 14.800[468]).

5. CIVIL RIGHTS — PERSON — GOVERNMENTAL IMMUNITY — UNITED STATES CODE.
   The State of Michigan is a person within 42 USC 1983, however,

a claim against the state under § 1983 may be barred by reason of governmental immunity (42 USC 1983; MCL 691.1407; MSA 3.996[107]).

6. CIVIL RIGHTS — MEDICAL CARE — STATE — UNITED STATES CODE.

A state's failure to provide a detainee with necessary medical care and treatment has been found to establish a 42 USC 1983 cause of action based on the violation of the detainee's constitutional right to due process of law where the plaintiff alleges acts or omissions sufficiently harmful to evidence deliberate indifference to the serious medical needs of the detainee (42 USC 1983).

7. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — INTENTIONAL TORTS.

Individual employees of governmental agencies are immune from liability for negligent acts or omissions if they are: (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts; there is no immunity for intentional torts committed by individual employees.

8. GOVERNMENTAL IMMUNITY — MEDICAL DECISION-MAKING.

Medical decision-making is inherently discretionary rather than ministerial in nature.

9. MENTAL HEALTH — MENTAL HEALTH CODE — ABUSE OF PATIENTS.

The Mental Health Code protects against physical, sexual or other types of abuse committed upon recipients of mental health services; such abuse is usually demonstrated by actions committed with much more than a negligent state of mind since the abuse is normally committed intentionally, recklessly or, at the very least, with a grossly negligent state of mind; the primary purpose is to ensure that mental health patients are treated in a humane manner, that their privacy is maintained and that the patients are protected from certain abuses by the mental health facility or its staff (MCL 330.1722[1]; MSA 14.800[722][1]).

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar*

and *Alan Hoffman,* Assistant Attorneys General, for defendants.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and J. D. PAYANT,* JJ.

D. E. HOLBROOK, JR., J. In March, 1984, plaintiffs filed a complaint in circuit court against Dr. Aurora Genoves-Andrews and in the Court of Claims against the State of Michigan, Department of Public Health, for the wrongful death of plaintiffs' decedent, Thomas Baltus. The defendant in each case was granted summary judgment on the basis that plaintiffs failed to plead facts sufficient to avoid the doctrine of governmental immunity. Plaintiffs' motion for rehearing was denied and they appealed in each case as of right. The cases were consolidated on appeal with plaintiffs raising several issues as to each defendant. We find we must reverse the entry of summary judgment as to defendant State of Michigan on plaintiffs' claim that the State of Michigan maintained a defective public building and as to defendant Genoves-Andrews on plaintiffs' 42 USC 1983 claim. We affirm the orders of summary judgment in all other respects.

Plaintiffs are the personal representatives of the estate of Thomas A. Baltus, who committed suicide while residing at defendant State of Michigan's Ypsilanti Regional Psychiatric Hospital. Baltus had been involuntarily admitted to the hospital on March 11, 1983, following an attempted suicide. Upon his admission to the hospital, Baltus was placed in the care of defendant Genoves-Andrews and other employees of the hospital.

During his first six days of care at the hospital, Baltus was the subject of a one-to-one suicide

* Circuit judge, sitting on the Court of Appeals by assignment.

precaution watch. On March 16, 1983, the precaution watch was discontinued, notwithstanding Baltus' continuing threats to kill himself. The following day Baltus went to the restroom unaccompanied and unsupervised and hanged himself from an overhead dividing bar inside a toilet stall.

Plaintiffs' complaints stated numerous theories for defendants' liability in avoidance of governmental immunity. With respect to this appeal, plaintiffs alleged the following against defendant State of Michigan:

> 1. Failure to adequately and properly design a building whereby plaintiffs' decedent would have been unable to commit suicide by hanging himself from the dividing bar inside a toilet stall.
> 2. Failure to provide the psychiatric and medical care necessary to protect plaintiffs' decedent from his suicidal tendencies in violation of 42 USC 1983.
> 3. Liability for breach of contract to provide adequate medical attention to decedent.
> 4. Liability for the "abuse" of plaintiffs' decedent in violation of MCL 330.1722; MSA 14.800(722).

Against defendant Genoves-Andrews, plaintiffs alleged the following:

> 1. Liability for acts of medical malpractice committed during the course of ministerial duties.
> 2. Liability for deprivation of medical treatment under color of law in violation of 42 USC 2983.
> 3. Liability for the "abuse" of plaintiffs' decedent pursuant to MCL 330.1722; MSA 14.800(722).

Defendants each moved for summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8), on the basis that plaintiffs' complaints failed to state a single claim upon which relief could be granted. The motions were granted in each court.

Plaintiffs first contend that pursuant to MCL 691.1406; MSA 3.996(106) their complaint in the Court of Claims stated a claim in avoidance of immunity against the State of Michigan on the basis that the state maintained a defective public building. We agree.

Although under MCL 691.1407; MSA 3.996(107) (hereafter § 7) all governmental agencies are immune from tort liability to the extent that they are engaged in governmental functions, pursuant to MCL 691.1406; MSA 3.996(106) governmental agencies remain statutorily liable for personal injuries arising out of dangerous or defective conditions in public buildings under the agency's control. *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 591; 363 NW2d 641 (1984). A building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. *Bush v Oscoda Area Schools*, 405 Mich 716, 730; 275 NW2d 268 (1979). Whether a part of a public building is dangerous or defective is to be determined in light of the uses or activities for which the building is specifically assigned. *Bush, supra*, p 731; *Lockaby v Wayne Co*, 406 Mich 65, 76-77; 276 NW2d 1 (1979).

We do not agree with defendants' contention that the factual allegations of plaintiffs' complaint allege negligent supervision rather than a structural fault in the Ypsilanti Regional Psychiatric Hospital building. Plaintiffs' complaint alleged in the following manner that the hospital had a structural defect:

(j) In the Ypsilanti Regional Psychiatric Hospital operating and maintaining its facilities on grounds which are inadequate to meet the physical needs of its patients and, in particular, the decedent, *i.e.*, to provide restrooms which would allow agents,

servants and/or employees of the Ypsilanti Regional Psychiatric Hospital to supervise and/or observe patients such as the decedent while they are in the restroom to prevent suicide attempts, when the Defendant knew, or in the exercise of reasonable care should have known, that such a situation constitutes a building defect that would cause serious harm and death to its in-patients, and in particular, to the decedent;

(k) In the Defendant failing to properly design its restrooms by installing bathroom stalls within the Ypsilanti Regional Psychiatric Hospital that had dividing bars across the top of said bathroom stalls, which would allow in-patients such as the decedent to make suicide attempts by trying to hang themselves from said dividing bars, when the Defendant knew, or in the exercise of reasonable care should have known, that such design defects would cause serious harm and death to the decedent.

A motion for summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8), tests only the legal sufficiency of the pleadings. The court must accept as true all well-pled factual allegations as well as any conclusions which can reasonably be drawn therefrom. The court may grant the motion only when the claim, on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify the right to recovery. *Partrich v Muscat,* 84 Mich App 724, 730; 270 NW2d 506 (1978). Where immunity from suit is at issue, the complaint must plead facts in avoidance of immunity. *Williamson v Jones,* 125 Mich App 433, 436; 336 NW2d 489 (1983). We conclude that plaintiffs' complaint in the Court of Claims sufficiently pled facts in avoidance of immunity under the defective buildings exception by alleging a structural defect in the hospital in light of the uses or activities for

which the wards in the hospital were specifically designed. Cf., *Lockaby, supra; Westervelt v Dep't of Corrections,* 86 Mich App 788; 273 NW2d 563 (1978), rev'd 406 Mich 941 (1979) (Citing *Lockaby, supra.).* Hence, as to the State of Michigan, summary judgment, on this ground, was inappropriate.

Plaintiffs next contend that the Court of Claims erred in granting defendant State of Michigan summary judgment with respect to plaintiffs' claim for breach of contract. Plaintiffs' claim is based on the holding in *Ross, supra,* that § 7 granting immunity to governmental agencies will not bar recovery simply because the underlying facts could have also established a tort cause of action where a plaintiff successfully pleads and establishes a non-tort cause of action:

> Defendants brought their motion for summary judgment under GCR 1963, 117.2(1). Such motions test the legal basis of the complaint, not whether it can be factually supported. Accepting as true a plaintiff's allegations, and any conclusions that may reasonably be drawn therefrom, the motion must be denied unless the claim is so clearly unenforceable as a matter of law that no factual development could justify a right to recover. Although most of the allegations contained in Counts I and II are identical, the latter count also alleges that plaintiffs contracted and agreed with defendants for decedent's care and treatment; plaintiffs paid valuable consideration for decedent's care; and defendants breached their contractual duties to plaintiffs and decedent. These allegations are sufficient to withstand defendants' challenge.

> We recognize that plaintiffs have and will attempt to avoid § 7 of the governmental immunity act by basing their causes of action on theories other than tort. Trial and appellate courts are routinely faced with the task of determining whether the essential elements of a particular cause of action have been properly pleaded and

proved. If a plaintiff successfully pleads and establishes a non-tort cause of action, § 7 will not bar recovery simply because the underlying facts could have also established a tort cause of action. [*Ross, supra,* pp 647-648.]

We find in the instant case that plaintiffs stated facts necessary to establish a contract between plaintiffs' decedent and the Ypsilanti Regional Psychiatric Hospital. Nonetheless, summary judgment was appropriate because certain statutory provisions necessitate a finding that, as a matter of law, no contract existed.

First, defendant State of Michigan was legally obligated to provide care to plaintiffs' decedent. Thomas Baltus was admitted to the hospital after execution of an application and physician's certificate for hospitalization. Pursuant to § 423 of the Mental Health Code, MCL 330.1423; MSA 14.800(423), this procedure was mandatory. Further, under § 430 of the Mental Health Code, the hospital was required to provide Baltus with a psychiatric examination within twenty-four hours of his admission. If a psychiatrist certifies that the patient is one who requires treatment, the patient's hospitalization may continue pending a court hearing. MCL 330.1430; MSA 14.800(430). In the instant case, the court hearing was held for Baltus and, pursuant to MCL 330.1468; MSA 14.800(468), he was committed to the hospital for a period not to exceed sixty days. As a result, defendant State of Michigan was required by statute to admit and care for plaintiffs' decedent at the Ypsilanti Regional Psychiatric Hospital. Because the hospital was legally obligated to admit plaintiffs' decedent, its promise to do so does not amount to sufficient consideration for a contract. See *Green v Millman Brothers, Inc,* 7 Mich App 450, 455; 151 NW2d 860 (1967), lv den 379 Mich 786 (1967).

In view of the above statutory provisions, the element of mutuality of assent was lacking on the part of defendant State of Michigan for purposes of the formation of a valid contract. See *Brown v Considine,* 108 Mich App 504, 507; 310 NW2d 441 (1981). Accordingly, summary judgment with respect to plaintiffs' breach of contract claim was appropriate.

Plaintiffs next contend that the Court of Claims and the circuit court erred in granting each defendant's motion for summary judgment on plaintiffs' claims, under 42 USC 1983, that defendants violated plaintiffs' decedent's constitutional rights by their deliberate indifference to his medical needs. We disagree.

With respect to defendant State of Michigan, we find that, while we recognize the state as a "person" under § 1983, we nevertheless find it to be immune from this type of suit.

42 USC 1983 specifically provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

We acknowledge that other panels of this Court have held that the state is not a person subject to a § 1983 lawsuit. See *Hampton v Michigan,* 144 Mich App 794; 377 NW2d 920 (1985); *Will v Dep't*

*of Civil Service,* 145 Mich App 214, 223; 377 NW2d
826 (1985), lv gtd 422 Mich 973 (1985). However,
we adhere to our position stated in *Smith v Michigan,* 122 Mich App 340; 333 NW2d 50 (1983), lv
gtd 422 Mich 973 (1985), that the state is a person
within § 1983. See also *Karchefske v Dep't of
Mental Health,* 143 Mich App 1; 371 NW2d 876
(1985); *Lowery v Dep't of Corrections,* 146 Mich
App 342, 354; 380 NW2d 99 (1985).[1]

We follow the well-reasoned opinion in *Karchefske* to find that plaintiffs' § 1983 claim is
barred by reason of defendant's sovereign immunity. In *Karchefske,* a panel of this Court stated
that, although the state is a person within § 1983,
the question of its immunity from such a suit
requires a separate analysis under federal law:

> Thus far, we are persuaded that the state is a
> § 1983 person and that the question of immunity
> requires separate analysis. Plaintiffs are correct in
> their assertion that immunity in state court from
> § 1983 damages liability is a question of federal
> law and cannot be determined on the basis of the
> governmental immunity act. MCL 691.1401 *et seq.;*
> MSA 3.996(101) *et seq. Martinez v California,* 444
> US 277, 284, fn 8; 100 S Ct 553; 62 L Ed 2d 481
> (1980), and *Cook v City of Detroit,* 125 Mich App
> 724, 730; 337 NW2d 277 (1983). The United States
> Supreme Court has construed § 1983 to incorporate a particular immunity defense only after
> careful inquiry into considerations of both history
> and policy. *Newport v Fact Concerts, Inc* [453 US
> 247, 259; 101 S Ct 2748; 69 L Ed 2d 616 (1981)].
> Clearly, the sovereign immunity of the states was
> well established at common law at the time that

---

[1] The panel in *Hampton* indicated that it had issued a certification
of conflict order pursuant to Administrative Order No. 1984-2, 418
Mich lxxxii, on the issue of whether the state is a person within 42
USC 1983. This appears to be the case with respect to *Karchefske* and
*Will* as well. *Lowery, supra,* p 354, n 4. We have done the same
herein.

§ 1983 was enacted. Furthermore, we are convinced that state immunity was supported by such strong policy reasons that "Congress would have specifically so provided had it wished to abolish the doctrine." *Owen v City of Independence,* 445 US 622, 637; 100 S Ct 1398; 63 L Ed 2d 673 (1980), quoting *Pierson v Ray* [386 US 547, 555; 87 S Ct 1213; 18 L Ed 2d 288 (1967)].

In considering the policy supporting sovereign immunity of the states from liability in their own courts, we find a compelling analogy in the Eleventh Amendment, even though the latter provision on its face governs the federal judicial power. The Eleventh Amendment is "but an exemplification" of the fundamental rule that "a State may not be sued without its consent." *Ex parte State of New York No 1,* 256 US 490, 497; 41 S Ct 588; 65 L Ed 1057 (1921), quoted in *Pennhurst State School & Hospital v Halderman,* 465 US 89, 98; 104 S Ct 900, 907; 79 L Ed 2d 67, 77 (1984). Therefore, we would expect the same clarity of Congressional intent to abrogate traditional sovereign immunity as the United States Supreme Court demanded (and found lacking) in *Quern* [v *Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979)] with respect to Eleventh Amendment immunity.

It would be anomalous, to say the least, that Congress would create a federal remedy to be enforced in the federal courts, but decline to give the federal courts power to enforce the remedy against the states while providing for enforcement by the state courts.

\*   \*   \*

Section 1983 did not deprive the state courts of jurisdiction to enforce federal rights, but added to the power of the federal courts. *Allen v McCurry,* 449 US 90, 99; 101 S Ct 411; 66 L Ed 2d 308 (1980). Since Congress did not extend the federal power to abrogate state sovereign immunity, we think it declined also to extend the state power. Thus, we are persuaded to accept at face value the Supreme Court's statement in *Quern, supra,* p 341, that Congress did not intend "by the general language

of § 1983 to override the *traditional sovereign immunity* of the States." See *Thiboutot v Maine,* 405 A2d 230, 236 (Me, 1979), aff'd 448 US 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980), and *Kapil v Ass'n of Pennsylvania State College & University Faculties,* 68 Pa Cmwlth 287; 448 A2d 717, 720 (1982), *rev'd on other grounds* 504 PA 92; 470 A2d 482 (1983). [*Karchefske, supra,* pp 8-10. See also *Lowery, supra.*]

Accordingly, summary judgment for failure to state a claim was appropriate with respect to plaintiffs' § 1983 claim against defendant State of Michigan.

On the other hand, summary judgment in favor of individual defendant Genoves-Andrews on plaintiffs' § 1983 claim was erroneous. A state's failure to provide a detainee with necessary medical care and treatment has been found to establish a § 1983 cause of action based on the violation of the detainee's constitutional right to due process of law if the plaintiff alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v Gamble,* 429 US 97, 106; 97 S Ct 285, 292; 50 L Ed 2d 251, 261 (1976); *Brewer v Perrin,* 132 Mich App 520, 529; 349 NW2d 198 (1984).

In *Brewer,* this Court delineated a two-part test to evaluate a plaintiff's claim for failure to provide necessary medical care and treatment under § 1983:

> In evaluating a plaintiff's claim of failure to provide necessary medical care and treatment, courts use a two-step test: "It requires deliberate indifference on the part of [the] officials and it requires the prisoner's medical needs to be serious." *West v Keve,* 571 F2d 158, 161 (CA 3, 1978).
> *Hendrix v Faulkner,* 525 F Supp 435, 454 (ND Ind, 1981), explained the second of these require-

ments: "A medical need is serious if it is 'one that
has been diagnosed by a physician as mandating
treatment or one that is so obvious that even a lay
person would easily recognize the necessity for a
doctor's attention.' *Laaman v Helgemoe,* 437 F
Supp 269, 311 (D NH, 1977)."

\* \* \*

To show this prong of the test [deliberate indif-
ference], a plaintiff must "show either denied or
unreasonably delayed access to a physician for
diagnosis or treatment of a discomfort-causing
ailment, or failure to provide prescribed treat-
ment." *Todaro v Ward,* 431 F Supp 1129, 1133 (SD
NY, 1977). See also *Ramos* [*v Lamm,* 639 F2d 559,
575 (CA 10, 1980)]. [*Brewer, supra,* p 530.]

Plaintiffs herein alleged that Dr. Genoves-An-
drews intentionally, willfully, wantonly, recklessly,
maliciously and negligently violated the constitu-
tional rights of the decedent in violation of 42 USC
1983 by failing to provide the medical and psychi-
atric care necessary to protect the decedent from
his suicidal tendencies. Plaintiffs further allege
that although defendant Genoves-Andrews knew
that the decedent had previously attempted sui-
cide and had threatened to do so again, defendant
Genoves-Andrews ignored his need to be attended.
Those allegations are sufficient to state a claim.
They satisfy the two-part test of alleging deliber-
ate indifference and a serious medical need enunci-
ated in *Brewer, supra,* and are analogous to the
allegations made in *Mosqueda v Macomb Co
Youth Home,* 132 Mich App 462; 349 NW2d 185
(1984). Plaintiffs should be allowed to proceed with
proofs on this claim.

Plaintiffs next contend that the circuit court
erred in granting defendant Genoves-Andrews' mo-
tion for summary judgment with respect to the
negligence claim. We disagree. Individual employ-

ees of governmental agencies are immune from liability for negligent acts or omissions if they are: (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts. *Ross, supra,* pp 633-634.

Plaintiffs contend only that defendant Genoves-Andrews' decision to discontinue the one-to-one suicide precaution watch and to allow plaintiffs' decedent to attend the restroom unsupervised were actions ministerial in nature and, therefore, not shielded by governmental immunity.

In *Ross,* the Supreme Court explained the ministerial-discretionary distinction:

"Ministerial" acts have been defined as those which constitute merely an obedience to orders or the performance of a duty in which the individual had little or no choice. . . . An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a non-tortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making. Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts.

Many individuals are given some measure of discretionary authority in order to perform their duties effectively. Therefore, to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature

of the activity, must be examined. The ultimate goal is to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner. [*Ross, supra*, pp 634-635.]

This Court has previously held that medical decision-making is inherently discretionary. See *Adams v Northville State Hospital*, 131 Mich App 583; 345 NW2d 207 (1983), lv den 422 Mich 891 (1985); *Hamilton v Reynolds*, 129 Mich App 375; 341 NW2d 152 (1983), lv den 422 Mich 891 (1985); *Fuhrmann v Hattaway*, 109 Mich App 429, 436-437; 311 NW2d 379 (1981), lv den 414 Mich 858 (1982). We agree and find in the present case that defendant Genoves-Andrews' decision was discretionary. Accordingly, defendant Genoves-Andrews was immune from liability for any negligence arising out of that decision and summary judgment on plaintiffs' negligence claim was appropriate.

Finally, plaintiffs contend that defendants are liable for the abuse perpetrated upon decedent, pursuant to MCL 330.1722; MSA 14.800(722), and therefore their claim based on this statute stated a cause of action in avoidance of governmental immunity. We disagree.

Section 722 of the Mental Health Code provides:

(1) A recipient of mental health services shall not be physically, sexually, or otherwise abused.

\* \* \*

(4) Any recipient of mental health services physically, sexually, or otherwise abused shall have a right to pursue injunctive and other appropriate civil relief.

In *Siener v Michigan*, 117 Mich App 179; 323

NW2d 642 (1982), aff'd 420 Mich 567; 363 NW2d 641 (1984), this Court stated:

> Subsection (4) extends the right to "appropriate civil relief" to an abused recipient. Because a public mental health facility is immune from tort liability when engaged in the exercise or discharge of its governmental function, MCL 691.1407; MSA 3.996(107), damages sought in a tort action do not constitute "appropriate civil relief" and, thus, may not be included even under this hypothetical reading. [*Siener, supra,* p 185.]

Even though we have found that plaintiffs stated a claim in avoidance of governmental immunity based on the defective public buildings exception, we nevertheless conclude that a claim against the state pursuant to § 722 in this instance is not "appropriate civil relief" since the claim is based on the state's action or inaction in allowing the alleged abuse to occur. The state is immune from tort liability in this instance since, at the time of decedent's death, it was engaged in a governmental function. MCL 691.1407; MSA 3.996(107). Hence, summary judgment as to defendant State of Michigan was appropriate.

However, individual employees of a state agency do not enjoy this type of blanket immunity. As noted, such individuals are liable if their tortious acts occur outside the scope of employment, while performing ministerial acts or while acting in bad faith. *Ross, supra,* p 592. Moreover, there is no immunity for intentional torts committed by individual employees, such as acts of abuse prohibited under § 722. Hence, because the suit for damages would otherwise be available against an individual state employee who is accused of abusing a mental patient, we find that such a suit is "appropriate civil relief."

Plaintiffs have, however, failed to sufficiently allege that the acts perpetrated by Genoves-Andrews defendant on their decedent constituted "abuse" under the Mental Health Code. MCL 3301722(1); MSA 14.800(722)(1) protects against physical, sexual or other types of abuse committed upon recipients of mental health services. Such abuse is usually demonstrated by actions committed with much more than a negligent state of mind. The abuse is normally committed intentionally, recklessly or, at the very least, with a grossly negligent state of mind. Further, the primary purposes of the statute are clear: "[T]o ensure that patient are treated in a humane manner and that their privacy is maintained" and "to protect the patient from certain abuses by the mental health facility or its staff." *Rocco v Dep't of Mental Health,* 114 Mich App 792, 798-799; 319 NW2d 674 (1982), aff'd 420 Mich 567; 363 NW2d 641 (1984).

The only action alleged by plaintiffs on the part of defendant Genoves-Andrews is that after six days defendant Genoves-Andrews decided to discontinue the one-to-one suicide watch and plaintiff was subsequently allowed to attend the restroom without supervision. Taking these allegations in a light most favorable to plaintiffs, *Partrich, supra,* we do not find that this type of action constitutes abuse within the meaning of § 722. Hence summary judgment with respect to the claim against Genoves-Andrews was appropriate.

In view of the foregoing, we conclude that the Court of Claims and the circuit court erred in granting summary judgment in favor of defendant State of Michigan on plaintiffs' defective public building claim and in favor of defendant Genoves-Andrews on plaintiffs' 42 USC 1983 claim. We therefore reverse the orders of summary judgment

in these respects only. The orders are affirmed in all other respects.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

J. D. PAYANT, J. *(concurring)*. I concur with Judge HOLBROOK's opinion in all respects except as to the language relative to the claim by plaintiffs against the State of Michigan under 42 USC 1983. I do not believe the United States Congress ever intended that a state be considered a "person" under 42 USC 1983. The rationale of *Hampton v Michigan,* 144 Mich App 794; 377 NW2d 920 (1985), and *Will v Dep't of Civil Service,* 145 Mich App 214, 223; 377 NW2d 826 (1985), should be followed. Plaintiffs' claim still must fail because the state enjoys sovereign immunity, which was an established common-law doctrine at the time of the enactment of 42 USC 1983 and was not abrogated by it.

T. M. BURNS, P.J. *(concurring)*. I concur with Judge HOLBROOK's opinion in all respects except one.

I believe that it is misleading to describe "medical decision-making" as "inherently discretionary." Even though a doctor may sometimes perform discretionary-decisional acts, there are other times when a doctor may act in a ministerial-operational capacity. Moreover, not all decisions which are made by a doctor are part of "medical decision-making." I believe that is inappropriate to emphasize such terminology instead of looking to the facts of the case in light of the general guidelines of *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984).

Nevertheless, I believe that the complaint's allegations of negligence indicate only that the doctor acted in a discretionary-decisional capacity when determining that plaintiffs' decedent's condition did not require a one-to-one suicide precaution watch or supervised use of the bathroom.

I concur with Judge HOLBROOK in all other respects.